IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**WALTER BECK,**

                **Plaintiff,**

v.                                         1:14-cv-3130-WSD

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security,**

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Gerrilyn G. Brill's Final Report and Recommendation [14] ("R&R"), recommending reversal and remand of this action.

## I.  BACKGROUND

### A.  Procedural History

On July 19, 2011, Plaintiff Walter Beck, Jr. ("Plaintiff") filed applications for a period of disability, disability insurance benefits, and supplemental security income. Plaintiff's claims were denied initially and on reconsideration. On March 19, 2013, a hearing was held before an Administrative Law Judge ("ALJ"). On June 11, 2013, the ALJ denied Plaintiff's claims. The Appeals Council denied Plaintiff's request for review.

On October 6, 2014, Plaintiff filed his Complaint [3] in this Court, seeking review of the decision of Commissioner Carolyn W. Colvin (the "Commissioner"). On August 12, 2015, the Magistrate Judge issued her R&R, recommending reversal of the Commissioner's decision and remand of this action. On August 26, 2015, the Commissioner filed her objections to the R&R. ([16]).

B.   Facts[1]

Plaintiff was forty two (42) years old at the time of the ALJ's decision. (Tr. 154, 320). He had a high school education, (Tr. 351), and had worked in the past as a helicopter repairperson in the Army and a jewelry repair business owner. (Tr. 168, 175-76, 343). Plaintiff alleged disability beginning on January 1, 2010, (Tr. 320), due to post-traumatic stress disorder ("PTSD"), depression, hypertension, a broken right shoulder, insomnia, bladder control, poor memory, migraine headaches, and "lt [sic] forearm," (Tr. 351). After reviewing the evidence and hearing testimony, the ALJ found that Plaintiff had severe impairments, but none that met or medically equaled a listing. (Tr. 145-47). The

---

[1]   The facts are taken from the R&R and the record. The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them. The Court thus adopts the facts set out in the R&R. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 147-52).  Based on Plaintiff's age, education, work history, RFC, and vocational expert testimony, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy.  (Tr. 153-54).  Therefore, the ALJ found Plaintiff not disabled.  (Tr. 154).

Neither party disputes the ALJ's recitation of Plaintiff's medical history.  (Tr. 148-52).  The primary issue in this case concerns the ALJ's evaluation of the opinion evidence from Plaintiff's treating psychiatrist, Marina Demetrashvili, M.D.

On April 8, 2012, Marina Demetrashvili, M.D., completed a Medical Source Statement.  (Tr. 848-50).  In the portion of the form titled "Making Occupational Adjustment," she opined that Plaintiff has poor or no ability to:  (1) follow rules; (2) relate to coworkers; (3) deal with the public; (4) use judgment; (5) interact with supervisors; (6) deal with work stress; (7) function independently; or (8) maintain attention and concentration.  (Tr. 848-49).  In response to the request on the form to describe the limitations and include the medical/clinical findings to support the assessment, Dr. Demetrashvili wrote, "Patient with mood disorder and PTSD

remains irritable, anxious, [and] has low capacity to deal with stress and restrictions." (Tr. 849).

On the portion of the form headed "Making Performance Adjustments," Dr. Demetrashvili checked boxes to indicate that Plaintiff had a good or fair ability to understand, remember, and carry out simple job instructions, a fair ability as to detailed but not complex instructions, and poor to no ability as to complex job instructions. In that part of the form, she wrote, "Patient has severe concentration difficulties and forgetfulness that limit[] his ability to focus on job instructions." (Tr. 849). As to "Making Personal Social Adjustments" she checked "fair" in the categories of "behave in an emotionally stable manner," "relate predictably in social situations," and "demonstrates reliability." (Tr. 850). "Fair" was defined as "Ability to function in this area is seriously limited." (Tr. 848).

On April 18, 2012, Dr. Demetrashvili completed a form that related to the criteria of Listing 12.04 Affective Disorders. (Tr. 851-54). On that form, she circled answers indicating that Plaintiff had depressive syndrome characterized by anhedonia; appetite disorders; sleep disturbance; decreased energy; feelings of guilt or worthlessness; and difficulty concentrating or thinking. (Tr. 851). In relation to manic syndrome, Dr. Demetrashvili indicated that Plaintiff exhibited

4

hyperactivity; flight of ideas; and easy distractibility. (Tr. 852). Dr. Demetrashvili also indicated on the form that Plaintiff had Bipolar Syndrome. (Tr. 852). She opined that Plaintiff had moderate to marked restriction of activities of daily living; marked to extreme difficulties in maintaining social functioning; marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and three episodes of decompensation. (Tr. 853). She wrote that Plaintiff has a history of mood disorder NOS, R/O Bipolar Disorder, and PTSD. He was treated with psychotropic medications but remained depressed and his condition prevented him from engaging in gainful employment. (Tr. 854).

On May 29, 2012, Dr. Demetrashvili completed a form that addressed the criteria of Listing 12.06 Anxiety-Related Disorders. In it, she noted that Plaintiff has medically documented persistent anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectations, and vigilance and scanning. He had recurrent and intrusive recollections of a traumatic experience, which is a source of marked distress. He had marked restriction of activities of daily living; marked difficulties in maintaining social functioning; and marked deficiencies in concentration, persistence or pace resulting in a failure to complete tasks in a timely manner (in work settings or elsewhere). He had repeated episodes of

deterioration in work or work-like settings, which cause the individual to withdraw from the situation and/or experience exacerbation of signs and symptoms (which may include deterioration and adaptive behaviors). (Tr. 1321).

## II. LEGAL STANDARDS

### A. Review of a Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). If no party has objected to the report and recommendation, a court conducts only a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam). Because the Commissioner has objected to the R&R, the Court conducts its *de novo* review.

### B. Review of a Decision of the Commissioner of Social Security

A court must "review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis

v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."  Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## III.  DISCUSSION

An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  The impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2)-(3).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  To determine if an applicant suffers a disability under the Social Security Act, an ALJ performs a five-step evaluation.  See id.; 20 C.F.R. §§ 404.1520, 416.920.  The five steps are:  (1) the claimant must prove that he is not engaged in substantial gainful activity; (2) the claimant must prove that he is suffering from a severe impairment or combination of impairments; (3) the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listed Impairment"); (4) if the claimant cannot prove the existence of a listed impairment, he must prove that his impairment prevents him from performing his past relevant work; (5) the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If, at any step of the sequence, the claimant can be found disabled or not

disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

The Magistrate Judge determined that the ALJ failed to properly evaluate the medical opinions of Dr. Demetrashvili. (R&R at 7). The Court agrees with the Magistrate. The Medical opinion of a treating physician "must be given controlling weight, *i.e.*, it must be adopted" if it is "well-supported and not inconsistent with the other substantial evidence in the case record." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996); accord 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). The Eleventh Circuit similarly has stated that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Phillips, 357 F.3d at 1240.

Good cause for rejecting an opinion exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent

9

with the doctor's own medical records." Id. at 1241. To ensure that proper weight is accorded to the opinion of a treating physician, the Commissioner must provide "explicit and adequate" reasons for rejecting that opinion. Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991); see also Phillips, 357 F.3d at 1241 (requiring the ALJ to "clearly articulate its reasons" when electing to disregard the opinion of a treating physician).

The ALJ stated that he gave little weight to the opinions of Dr. Demetrashvili[2] because:

> [T]hey are not supported by the medical evidence of record, which shows a good level of adaptive functioning. The claimant is able to use public transportation, form new personal relationship[s], regularly attend medical appointments and relate in a calm and cooperative manner with medical providers.

(Tr. 151). The Magistrate determined that these observations are not a valid basis to reject the medical opinion of Dr. Demetrashvili, because the Court has no basis to assume that Dr. Demetrashvili did not take Plaintiff's activities and demeanor into consideration, and there is no clear inconsistency between Plaintiff's activities

---

[2] The ALJ did not refer to Dr. Demetrashvili as a treating physician or to the regulations applicable to the opinions of treating physicians. It is therefore not clear from the ALJ's opinion that he even knew that Dr. Demetrashvili was a treating physician.

10

and demeanor and Dr. Demetrashvili's professional opinions about Plaintiff's conditions. (R&R at 9-10). The Court agrees. See Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982) (stating that the ALJ cannot substitute his judgment for that of the medical experts); Hillsman v. Bowen, 804 F.2d 1179, 1182 (11th Cir. 1986) (remanding where the ALJ improperly rejected the opinion of the treating physician simply because the ALJ "reached a different conclusion after reviewing the medical records").

The Commissioner objects on the ground that "substantial evidence supports the ALJ's determination and . . . the ALJ did not err in accounting for Plaintiff's activities and interactions with others when discounting Dr. Demetrashvili's opinion." (Obj. at 2). The Commissioner argues that, because the record shows Plaintiff used public transportation and formed new relationships, among other activities, the "ALJ reasonably concluded that such abilities and activities were not wholly consistent with Dr. Demetrashvili's opinion . . . ." (Id. at 2-3). The Magistrate, however, correctly stated that there is no basis to assume Dr. Demetrashvili did not also take these activities into account in formulating her opinion, and that there is no clear inconsistency between these activities and Dr.

11

Demetrashvili's opinions. (R&R at 10).³ Even assuming, as the Commissioner contends, that the abilities and activities the ALJ cited "were not wholly consistent

---

³ The Commissioner cites to several cases to support that the ALJ did not err in discounting Dr. Demetrashvili's opinion. At the outset, all three cases the Commissioner cites are unpublished opinions, and therefore are not binding on the Court. See 11th Cir. R. 36-2. The cases, moreover, do not apply here. Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 484, 488 (11th Cir. 2012) does not apply because, unlike here, the medical opinion at issue in Beegle was not that of a treating physician. Id. ("As a physician who only examined [plaintiff] on a single occasion and did not treat him, the ALJ was not required to defer to Dr. Storjohann's opinion."). In Wind v. Barnhart, 133 F. App'x 684, 691-92 (11th Cir. 2005), the Eleventh Circuit found that the ALJ did not err in discounting a treating physician's opinion, because the opinion "inexplicably" conflicted with the treating physician's other opinions, was "not supported fully by her own treatment notes," and was inconsistent with plaintiff's own statements. Here, there is no suggestion Dr. Demetrashvili's opinions are inconsistent or not supported by her own treatment notes, and the ALJ points only to Plaintiff's activities to support discounting Dr. Demetrashvili's opinions. The Court finds these activities are not so inconsistent with Dr. Demetrashvili's assessment as to constitute good cause to discount her opinion. See Phillips, 357 F.3d at 1240.

Plaintiff also cites to Castle v. Colvin, 557 F. App'x 849, 851-53 (11th Cir. 2014). In Castle, the Eleventh Circuit upheld a district court's determination that "the ALJ should have afforded [the treating physician's] opinion less weight," because the treating physician completed the assessment two years after plaintiff's date last insured, evidence from other physicians and the plaintiff himself contradicted the treating physician's opinion, and the treating physician admitted his opinion was "primarily based on subjective findings." Id. Here, Dr. Demetrashvili's opinion is based on multiple assessments, there is no contradictory evidence from other medical professionals, and Dr. Demetrashvili has not stated that her opinion is based on subjective findings. Here, unlike the cases cited above, the ALJ has not shown good cause to discount the treating physician's opinion. See Phillips, 357 F.3d at 1240.

12

with Dr. Demetrashvili's opinion," this is not sufficient to discount the opinion of a treating physician.  See Phillips, 357 F.3d at 1240 (good cause for rejecting a treating physician's opinion exists when the evidence supports a contrary finding). The evidence the ALJ cites does not support a contrary finding.  The Commissioner's objection is overruled.

The Commissioner next objects on the ground that the ALJ provided additional reasons to discount Dr. Demetrashvili's opinion.  The Commissioner argues that the ALJ found Dr. Demetrashvili's opinion "was not consistent with the medical evidence as a whole," offering evidence that "Plaintiff's global assessment of functioning (GAF) scores were regularly in the 50s or 60s, suggesting no more than moderate symptoms or limitations."  (Obj. at 4).  She cites to Gilabert v. Comm'r of Soc. Sec., 396 F. App'x 652, 655 (11th Cir. 2010) to support her argument that GAF scores in the moderate range can support a decision to discount a treating physician's opinion of severe limitations.  In Gilabert, however, the Court made its decision based not only GAF scores in the moderate range, but also because:

> two non-examining consultants found Gilabert to have only mild to moderate phychiatric symptoms . . . [and the treating physician] took Gilabert off all of her medications . . . when she reported that she was

13

> pregnant, providing further evidence that her condition was not as severe as Thebaud's RFC suggested.

Id. at 655.  Here, there are no conflicting opinions of non-examining consultants, and no indication Plaintiff was taken off of his medication.

Further, "the Commissioner does not endorse GAF scores in social security disability cases because they have no direct correlation to the severity requirements of the mental disorders listings." Greene v. Comm'r of Social Sec., No. 6:11-cv-1357-Orl-GJK, 2013 WL 1278091, at *7 (M.D. Fla. Mar. 28, 2013) (citing Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005)) (internal quotation marks omitted).  "Thus, the ALJ's reliance on a GAF score as a basis to discount a treating physician's opinion is circumspect.  In any event, the ALJ does not articulate how the GAF score is inconsistent with [the treating physician]'s opinion." [4]  Id.; see also Chavanu v. Astrue, No. 3:11-cv-388-J-TEM, 2012 WL

---

[4]    Though the ALJ notes the GAF scores, it is not clear that he discounted Dr. Demetrashvili's opinion based on the scores.  (See Tr. 150-51).  The ALJ's statement that he "assigns Dr. Demetrashvili's opinion little weight because [her] findings are not supported with the medical evidence of record as detailed above," (Tr. 151), is insufficient, because he was required to provide "explicit and adequate" reasons for rejecting her opinion.  Elam, 921 F.2d at 1215.  The only "explicit" reasons the ALJ detailed were Plaintiff's use of public transportation and other activities which, as discussed above, are not adequate to support discounting

14

4336205, at *4 (M.D. Fla. Sept. 21, 2012) (GAF score of 50-53, standing alone, was neither inconsistent with, nor provided good cause to reject doctor's opinion). The Commissioner's GAF argument appears to be nothing more than an after-the-fact justification for the ALJ discounting Dr. Demetrashvili's opinion.[5] The Commissioner's objection is overruled.

The Magistrate Judge determined the ALJ erred in concluding that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (Obj. at 5). The Magistrate Judge found the ALJ erred because Dr. Demetrashvili had provided statements that Plaintiff's impairments met the criteria for listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders). (R&R at 10). The Commissioner objects on the ground that Dr. Demetrashvili offered *opinions* as to the Listed Impairments, and opinions are "not necessarily the same as *findings* that reflect the severity required by the listings." (Obj. at 5). To support her argument, the Commissioner points to

---

the opinion of a treating physician. The GAF score, while having potential probative value in context, was not an explicit basis for the ALJ's determination.
[5]   If, on remand, the ALJ once again gives Dr. Demetrashvili's opinions less than substantial weight, the ALJ may wish to consider obtaining an opinion from a consultative examining physician. See Greene, 2013 WL 1278091, at *8 n.8.

15

the fact that "findings" and "opinions" are discussed in separate areas and subsections of the regulations and have separate definitions. (Obj. at 5-6).

The Commissioner offers no case law to support her novel argument, and the Court is unable to find any cases addressing this issue. In any event, the Commissioner's focus on establishing a difference between findings and opinions is not relevant, because the ALJ was required to consider both. Though the ultimate question whether Plaintiff is disabled is reserved to the Commissioner, the ALJ "use[s] medical sources, including [the applicant's] treating source, to provide evidence, *including opinions*, on the nature and severity of [the applicant's] impairment(s)." 20 C.F.R. § 404.1527(d)(2) (emphasis added). In determining whether Plaintiff's impairments met the criteria for a Listed Impairment, to the extent the ALJ excluded Dr. Demetrashvili's "opinions" because they were not "findings"—as the Commissioner contends is appropriate—the ALJ's determination was not based upon proper legal standards, and the Commissioner's objection is overruled. See Lewis, 125 F.3d at 1439.

## II.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Commissioner Carolyn W. Colvin's Objections [16] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Gerrilyn G. Brill's Final Report and Recommendation [14] is **ADOPTED**.  This action is **REMANDED** to the Commissioner for further consideration consistent with this opinion and the Final Report and Recommendation.

**SO ORDERED** this 20th day of November, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE